UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE


| ROBERT DEWAYNE RUCKER | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 2:11-CV-70 |
| | ) | *Judge Mattice* |
| HARRY A. ZAIN, M.D.; BLAKE FRAZIER, Case Worker, Dept. of Children's Svcs.; TENNELLE MILLER, Case Worker, Dept. of Children's Svcs.; HEIDI HUENERGARDE, Case Worker, Dept. of Children's Svcs.; and DEPARTMENT OF CHILDREN'S SVCS., | ) | |
| Defendants. | ) | |

## **MEMORANDUM and ORDER**

Acting *pro se*, former prisoner and here plaintiff Robert Dewayne Rucker brings this civil rights complaint under 42 U.S.C. § 1983, seeking damages against a physician, the Department of Children's Services ("DCS"), and three of its case workers. His application to proceed without prepayment of fees is **GRANTED**.

Under 28 U.S.C. § 1915(e)(2), a court is required to screen a civil complaint brought by a litigant proceeding *in forma pauperis* and to dismiss an action at any time if the court determines that it is frivolous or fails to state a claim upon which relief can be granted. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997)*, overruled on other grounds*

by *Jones v. Bock*, 549 U.S. 199 (2007). In performing this task, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). After reviewing the pleading filed in this case, the Court finds that a *sua sponte* dismissal is the appropriate disposition of this action. Consequently, no service shall issue and this complaint will be dismissed.

The allegations in plaintiff's complaint involve the birth of a son with a disability and a daughter whose well being was placed in jeopardy by the defendants' claimed wrongful conduct. The defendants—all listed only in the body of the complaint and not in the caption—are Dr. Harry A. Zain, the physician who cared for the mother of plaintiff's son during her pregnancy and, impliedly, delivered the child; the Department of Children's Services (hereinafter DCS) in Morristown, Tennessee; and three DCS case workers—Blake Frazier, Tennelle Miller, and Heidi Huenergarde.

The claims have been grouped into two categories, according to the defendant charged with the constitutional wrongdoing.

    1. <u>Claims against Defendant Harry A. Zain, M.D.</u>

A. *Plaintiff's Allegations*

Defendant Zain, according to the pleading, is the obstetrician/gynocologist of Cissy Dee Thurman, who is the mother of his daughter and infant son. Dr. Zain was notified by DCS that his patient was addicted to and abused pain medications during her last pregnancy.

2

Even so, Dr. Zain gave Ms. Thurman pain medications in March of 2010, during the first months of her pregnancy with plaintiff's son. Defendant Zain was directed, in June of 2010, to check his patient's blood work (for evidence of drugs?) during her monthly check-up, but failed to so do. On October 7, 2010, plaintiff's son was born disabled and he will require hospitalization for the rest of his life. The injuries sustained by his son were caused by the pain medications taken by Ms. Thurman and given to her by Dr. Zain. Plaintiff asks for damages to compensate him for the physical and mental injuries to himself, his son, and his family, which resulted from the doctor's prescription of pain medication to Ms. Thurman and his failure to test her for her use (or abuse) of the medication.

B. *Law & Analysis*

To state a viable § 1983 claim, a plaintiff must allege: 1) that he was denied a right privilege or immunity secured by the constitution or laws of the United States, and 2) that the deprivation was caused by a person acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). The plaintiff has failed to make either showing.

First of all, plaintiff has the burden of showing that defendant Zain was acting under color of state law when he treated Ms. Thurman while she was pregnant with plaintiff's son. Defendant Zain is a private physician. Nothing asserted in the pleading demonstrates that Dr. Zain was acting on behalf of a governmental entity during Ms. Thurman's treatment, so as to satisfy the "acting under color of state law" element of a § 1983 claim. *See Collyer v. Darling*, 98 F.3d 211, 231-232 (6th Cir. 1996) (finding that " neither doctor is a state actor

3

and thus cannot be sued under § 1983"). While private actors may be liable under § 1983, if the challenged conduct is attributable to the state, *id*. at 231-32, or if they conspire with the state to violate civil rights, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1981), the complaint contains no allegations of this nature.

Secondly, the plaintiff's argument, reduced to its essence, is that he is due compensation because Dr. Zain violated the duties of care towards his patient. Such a claim sounds in the state law of negligence. Negligence, however, does not provide a viable basis of liability under § 1983. *See Davidson v. Cannon*, 474 U.S. 344 (1986); *Daniels v. Williams*, 474 U.S. 327 (1986). Compensation for injuries resulting from negligence must be sought in state court under traditional tort-law principles. *See, e.g., Baker v. McCollan*, 443 U.S. 137, 146 (1979).

Accordingly, the Court finds that the plaintiff has failed to state a constitutional claim against this defendant.

2. Claims against Defendants DCS, Blake Frazier, Tennelle Miller, and Heidi Huenergarde (DCS Case Workers)

A. *Plaintiff's Allegations*

The allegations against these defendants involve plaintiff's 3-year old daughter and newborn son and are as follows. From March to July of 2010, defendant DCS refused to look at evidence showing that the children's mother abused them while she was taking pain pills. Had this defendant but looked, it would have seen proof that she was injecting those

substances into her arm and smoking crack cocaine at Walmart. In July, Morristown police officers intervened in the situation and tested Ms. Thurman for drugs. She failed the test. They said that they intended to prosecute her for the abuse and charge her with using drugs while pregnant, but they failed to do this. Plaintiff maintains that because DCS refused to investigate his allegations, Ms. Thurman, he, and their children have endured and will endure a lot of emotional stress and pain.

After plaintiff found his daughter wandering alone in a park, abandoned by her mother, Case Worker Blake Frazier removed his child from his care and took her to a foster home in Maryville, Tennessee. Defendant Frazier did not inform plaintiff of his daughter's whereabouts. Plaintiff called to try to explain his daughter's medical needs, but defendant responded that it was too late and hung up. Two weeks later, plaintiff discovered where defendant had taken his offspring and called the foster mother, who told him that his daughter's nose was bleeding badly and that, when defendant Frazier had dropped the child off, defendant had said that someone from the office would contact her. The foster mother stated that no one had contacted her and that defendant Frazier would not return her calls, even though she was telephoning to find out about the child's medical needs, of which, by inference, she knew nothing.

Plaintiff asserts that he called defendant Tennelle Miller at the DCS office on October 8 or 9, 2010, and advised her that Ms. Thurman had messed up his newborn son with her drug use and that Ms. Thurman was in the hospital, high on drugs. Plaintiff asked defendant

5

to come to the hospital to perform a drug test on Ms. Thurman because the jail where she would be taken would allow her to breast feed his son. The DCS office refused to come to the hospital, so plaintiff reported Ms. Thurman's drug use to a hospital case worker, who in turn contacted defendant Miller. Defendant Miller represented to the hospital case worker that the DCS had no record of Ms. Thurman using drugs while pregnant. This was a flat out lie, plaintiff insists, because his son was born October 7, 2010 and his son's mother failed a drug screen for DCS in July, 2010.

Case Worker Heidi Huenegarde urged plaintiff to permit his daughter, who had been in plaintiff's custody since the age of 2½ months, to have an hour's unsupervised visit with her mother, who in Ms. Huenergard's opinion, was doing okay. Though plaintiff believed that Ms. Thurman, the child's mother, was using drugs and was not undergoing court-ordered drug screens, he reluctantly assented to the unsupervised visit out fear that, if he did not, the DCS would take custody of his child—an event which would occur, according to defendant Huenergard, unless the mother were allowed a visit.

The day of the visit, July 3rd or 4th of 2010, Ms. Thurman picked up her daughter, took her to the housing projects, and left her unattended at the playground for 3 hours or so. Plaintiff found his young daughter walking up Lennie Avenue, crying her heart out, scared, and wearing wet underwear. Two hours later, her mother was located, messed up on drugs. Plaintiff alleges that, had this defendant done her job and given Ms. Thurman drug tests, his daughter would not have been placed in harm's way.

Defendant Case Workers Frazier and Huenergarde were notified in person and by telephone numerous times from March through May, 2010, about Ms. Thurman's abuse of pain pills and other drugs. However, even though Ms. Thurman was the mother of plaintiff's daughter and was two months pregnant with his son, they would not administer Ms. Thurman a drug test. In July, 2010, when Ms. Thurman was 4½ months pregnant, she failed a drug test. However, defendants did not follow up on the failed drug screen and further disregarded plaintiff's repeated calls to the office reporting that Ms. Thurman was usisng drugs and getting high on drugs. Finally, he coaxed an agreement from them in September of 2010, that Ms. Thurman would be tested for drugs when she delivered plaintiff's son. This never happened. Because these defendants had a duty to protect his children and because they failed to fulfil their duty, plaintiff's son was born on October 7, 2010, with a disability due to his mother's drug use. Defendants Frazier's and Huenergarde's neglect of their duties to protect children resulted in plaintiff's son being born with a disability due to his mother's abuse of drugs.

B. *Law & Analysis*

The complaint is not specific as to whether the individual defendants are being sued in their official capacity, individual capacity, or both. A suit brought against a public official will not be construed as seeking damages against the defendant in his individual capacity unless such a claim for individual liability is clearly and definitely set forth in the pleading. *See Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir.), *cert. denied*, 515 U.S. 1116 (1995).

The designation of individual capacity need not be explicit—though, of course, that is preferable—so long as the pleadings and other filed documents provide sufficient notice to defendants that they are being sued as individuals. *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001).

Here, plaintiff has made no express designation of the capacity in which he is suing the individual defendants. Nor has he alleged anything in the pleading to indicate that he is suing them in their individual capacities. Absent an indication—express or otherwise—that they are being sued in their individual capacities, the Court must assume they are being sued only in their official capacities as DCS employees.

An official capacity lawsuit for damages against a state agency or its employees implicates the Eleventh Amendment. The DCS is an agency of the State of Tennessee. Online at http://www.tn.gov/topics/Dept.+of+Children%27s+Services (As visited October, 18, 2011). It is well-settled that the Eleventh Amendment bars an action for damages in a federal court against a State or a state agency, or any of its employees in their official capacities, unless Congress has abrogated its sovereign immunity or the State has expressly waived it. *See, e.g. Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472-73 (1987); *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986). Congress did not abrogate Eleventh Amendment immunity by enacting § 1983, *Quern v. Jordan*, 440 U.S. 332 (1979), and the State of Tennessee has not waived its right to sovereign immunity. *Gross v. University of*

*Tennessee*, 620 F.2d 109, 110 (6th Cir. 1980). *See also* Tenn. Code Ann. § 20-13-102(a). Accordingly, the DCS and its employees (i.e., defendants Frazier, Miller and Huenergarde) are entitled to immunity from damages in their official capacities.

Accordingly, this lawsuit will be dismissed because plaintiff has failed to state a claim against the defendant in the first category of claims and because all defendants in the second category enjoy Eleventh Amendment immunity against this suit for damages.

A separate order will enter.


**ENTER**:

>   */s/Harry S. Mattice, Jr.*
>   HARRY S. MATTICE, JR.
>   UNITED STATES DISTRICT JUDGE